**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DIAMOND FINANCE CO., INC.<br><br>        Debtor. | Chapter 7<br>Case No. 20-71877 (REG) |
| Marc Pergament, Chapter 7 Trustee of the Estate of Diamond Finance Co., Inc.,<br><br>        Plaintiff,<br><br>    -against-<br><br>Torac Realty, LLC,<br><br>        Defendant. | Adv. Proc. No.<br><br>COMPLAINT |

Marc Pergament, as Chapter 7 trustee ("Trustee" or "Plaintiff") of the above captioned debtor (the "Debtor"), by and through his undersigned counsel, Olshan Frome Wolosky LLP, as and for his Complaint herein, respectfully alleges and represents to this Court as follows:

**PRELIMINARY STATEMENT**

1. The Trustee brings this suit, under 11 U.S.C. §§ 544, 548, 550 and 551 and under New York Debtor and Creditor Law, and Business Corporation Law, to recover certain transfers made to Defendant (the "Transfers").

2. This action arises under 11 U.S.C. §§ 544, 548, 550 and 551, Rules 6009 and 7001 of the Federal Rules of Bankruptcy Procedure, Article 10 of the New York Debtor and Creditor Law (the "NYDCL"), and the Business Corporation Law (the "BCL").

3. In December 2019, Article 10 of the NYDCL was amended to adopt the Uniform Voidable Transactions Act with respect to "transactions" occurring on or after April 4, 2020. The

pre-amendment NYDCL, however, continues to govern "conveyances" occurring on or before April 4, 2020, which include the Transfers, and as such, cites to the NYDCL herein are to the NYDCL as in effect during the time of the Transfers.

4. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 as this action arose in and under the Debtor's pending Chapter 7 case.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

6. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

7. This is an action for money damages and for the avoidance and recovery of fraudulent transfers of the Debtor's property.

## THE PARTIES

8. On or about April 14, 2020, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the Debtor (the "Petition Date").

9. On or about May 20, 2020, an Order for relief was entered.

10. On or about May 20, 2020, Plaintiff became Interim Trustee and subsequently qualified as the permanent Trustee.

11. Defendant Torac Realty, LLC is a New York limited liability company with offices at 2200 Marcus Avenue, New Hyde Park, New York. Torac had a close relationship with the Debtor. Torac's founder, Thomas Weitzman, was a long time friend of Robert Diamond, the owner of the Debtor. The Debtor's offices were next door to those of Torac and Messrs. Diamond and Weitzman often vacationed together. Torac served as the Debtor's landlord for many years. It also provided approximately $740,000 in advances to the Debtor and other businesses run by Robert Diamond, recovering more than $ 1.32 million in principal and interest payments. Torac demanded a repayment of its principal in June 2016 and received its principal and interest by early 2018. These repayments were funded by monies that the Debtor obtained

from later investors, many of whom became creditors when the Debtor's Ponzi scheme collapsed. The Transfers include the payments in excess of the principal that Torac received.

## BACKGROUND

12. The Debtor provided sub-prime loans to automobile consumers through a finance license issued by the New York State Department of Financial Services (the "DFS"). Robert Diamond was the Debtor's CEO and sole shareholder.

The Ponzi Scheme

13. By 2013, the Debtor's business was failing. The DFS rated the Debtor's financial condition as "marginal" as of June 30, 2013, citing falling revenue, continued unprofitability, insufficient liquidity and a heavy debt load. The Debtor, in short, was insolvent. Instead of turning around the Debtor's business, Robert Diamond decided to double down and use the Debtor as a vehicle for a Ponzi scheme.

14. Over the next seven years, the Debtor's debts grew, while revenue shrunk to a nominal level and losses mounted annually. The increased debt served several purposes, including to pay interest on the pre-existing debt, to fund Diamond's personal lifestyle, and to fund other Diamond controlled businesses. Throughout, Diamond maintained the façade that the Debtor operated a bona fide business. He advised investors that their funds would be used for subprime loans which would generate high returns. The Debtor's ability to timely pay interest on its existing debt provided investors with false comfort that the business was sound. In reality, the new money that Diamond raised from investors went to pay the old. By early 2020, the Debtor owed more than $9 million to investors, an increase of more than $7.5 million from its debt in 2014.

15. Diamond's fraudulent scheme involved more than deceiving investors. He also lied repeatedly to the DFS, the New York agency that regulated the Debtor's lending activity. On

multiple occasions, Diamond advised the DFS that the Debtor's borrowings were from banks, not individual investors. This deception gave the false impression that a responsible financial institution had vetted the debt. In his DFS financial reports Diamond also listed as "other assets" more than $2 million that the Debtor had advanced to Auto City International Inc. ("Auto City"), another Diamond-owned business. Auto City was insolvent and had no ability to repay this obligation. The "other asset" was in fact worthless. Accurate disclosure of the Debtor's financial condition would have triggered immediate closure of the business. Diamond also deceived the DFS about the constant overdrafts that the Debtor incurred with its bank. When asked to explain why the Debtor had a negative balance at its bank in June 2015, Diamond responded that the overdraft was "corrected" in July 2015. In fact, the Debtor was in an overdraft position for most of July, 2015 until Diamond deceived an investor into making a large loan, thereby increasing the cash balance.

16. The DFS noted in its September 30, 2016 review, once again, the Debtor's "losses, poor financial condition, negative capital and insufficient liquidity." These observations came notwithstanding Diamond's deceit regarding the true state of the Debtor's financial condition.

17. Diamond well understood that the financials records of the Debtor were doctored, as he failed to file tax returns for the Debtor and his other businesses starting in 2017. Diamond ignored his obligations to file tax returns for each of 2017, 2018, and 2019, despite have a seasoned tax professional on his payroll who was capable of completing the returns if provided with accurate information.

18. The fraudulent nature of Diamond's Ponzi scheme is evident by the financial condition of the Debtor in 2017. From 2014 to 2017, the Debtor's borrowing from investors had

swelled from approximately $3.6 million to $6.0 million, as its business shrunk and its losses mounted. By 2017, according to its own financial statements, the Debtor had annual revenue of approximately $383,000, while interest expense on money borrowed from investors was $636,026.

The Torac Fundings

19. Defendant Torac was a major beneficiary of Diamond's fraudulent scheme, as it received $1,322,000 between August 2015 and December 2017 to satisfy loans made in 2013 and 2014. During these same years, the Debtor's borrowings from investors increased by approximately $2.3 million. Without the investor borrowings, the Debtor had no means to repay Torac.

20. Commencing September 2013, Torac made a series of loans to the Debtor, advancing $240,000 in September 2013; $100,000 in January 2014; $50,000 in April 2014; and $30,000 in September 2014. Torac received regular interest payments on these advances commencing January 2014. In January 2014, Torac assigned an early loan to the Debtor in the principal amount of $350,000 to Basic Capital Corp. ("Basic"), a California corporation controlled by a relative of Torac's, principal, Thomas Weitzman. The assignment satisfied a Torac obligation to Basic and the Debtor made payments to Basic in lieu of Torac.

21. Torac demanded repayment of its principal and interest on August 1, 2015. It was paid back by November 2017. Torac received in total $812,387.46 from the Debtor between April 2014 and November 2017, repaying the principal ($420,000) plus interest. The foregoing amount includes sums paid to Basic at the direction of Torac. The payments in excess of principal are Transfers.

22. In addition to advancing funds to the Debtor, Torac also lent money to two money losing businesses that were supported by the Debtor as part of Diamond's Ponzi scheme.

5

23. In 2014, Diamond discussed with Torac's principal the formation of a new business to lend to auto dealerships in "floor plan" arrangements, i.e. financing the dealer's purchase of inventory. They formed Diamond FFP Inc. ("FFP") in 2014 as 50-50 partners. Later that year, the ownership shifted to full ownership by Diamond when Torac could not raise additional capital needed to start the business. Torac advanced $100,000 to FFP in July 2014. In January 2015, FFP began to repay principal and interest. By year end 2015, Torac received $190,000 from FFP. This entity had no functioning business and relied on the Debtor for these funds.

24. In April 2014 and June 2014, Torac advanced $100,000 and $120,000 respectively, to a second Diamond business, Diamond Finance of New Jersey, Inc. ("DFC-NJ"). Diamond formed DFC-NJ to make car loans to consumers in New Jersey. Like its sister company, the Debtor, DFC-NJ was a money-losing, insolvent enterprise, but worse. The Debtor paid for one hundred percent of the salaries and overhead associated with DFC-NJ, and it still lost money. Torac received interest and/or principal payments on its loans to DFC-NJ from July 2014 through July 2018 totaling $320,326. DFC-NJ did not have the ability to make these payments on its own, so it obtained funds from the Debtor to do so.

25. The amounts paid by the Debtor to FFP and DFC-NJ and then to Torac are also Transfers.

**COUNT I**
**FRAUDULENT CONVENANCE PURSUANT TO NYDCL § 273**

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "25" of this Complaint as if more fully set forth at length herein.

27. Debtor was insolvent at the time it made the Transfers or became insolvent as a result of the Transfers.

28. Each Transfer was made without fair consideration.

29. By virtue of the foregoing, pursuant to 11 U.S.C. §§ 544(b) and NYDCL § 273, Plaintiff is entitled to a judgment avoiding each of the Transfers and awarding Plaintiff damages in a sum to be determined at trial.

## COUNT II
## FRAUDULENT CONVENANCE PURSUANT TO NYDCL § 274

30. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "29" of this Complaint as if more fully set forth at length herein.

31. Each Transfer was made without fair consideration.

32. Each Transfer was made when the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the conveyance constituted unreasonably small capital.

33. By virtue of the foregoing, pursuant to 11 U.S.C. §544(b) and NYDCL § 274, Plaintiff is entitled to a judgment avoiding each of the Transfers and awarding Plaintiff damages in a sum to be determined at trial.

## COUNT III
## FRAUDULENT CONVENANCE PURSUANT TO NYDCL § 275

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "33" of this Complaint as if more fully set forth at length herein.

35. Each Transfer was made without fair consideration.

36. Each Transfer was made when the Debtor intended or believed that it will incur debts beyond its ability to pay as they mature.

37. By virtue of the foregoing, pursuant to 11 U.S.C. §544(b) and NYDCL § 275, Plaintiff is entitled to a judgment avoiding each Transfer and awarding Plaintiff damages in a sum to be determined at trial.

## COUNT IV
## PURSUANT TO NYDCL § 276

38. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "37" of this Complaint as if more fully set forth at length herein.

39. The Transfers were made with the actual intent to hinder, delay or defraud the present or future creditors of the Debtor.

40. By virtue of the foregoing, pursuant to 11 U.S.C. §544(b) and NYDCL § 276, Plaintiff is entitled to a judgment avoiding each Transfer and awarding Plaintiff damages in a sum to be determined at trial.

## COUNT V
## PURSUANT TO NYDCL § 276-a

41. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "40" of this Complaint as if more fully set forth at length herein.

42. The Transfers were made with the actual intent to hinder, delay or defraud the present or future creditors of the Debtor.

43. By virtue of the foregoing, pursuant to 11 U.S.C. §544(b) and NYDCL § 276-a, Plaintiff is entitled to a judgment in the amount of the attorney's fees and expenses it incurs in connection with this action.

## COUNT VI
## PURSUANT TO 11 U.S.C. 550

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "43" of this Complaint as if more fully set forth at length herein.

45. Torac was a subsequent transferees of the Debtors' funds or the immediate or mediate transferee of an initial transferee.

8
5811157-4

46. To the extent Torac received subsequent Transfers from FFP and DFC-NJ, those entities were initial transferees of the Debtor.

47. Plaintiff is entitled to recover all Transfers received by Torac from FFP and DFC-NJ for the benefit of the estate pursuant to 11 U.S.C. § 550 of the Bankruptcy Code.

48. By virtue of the foregoing, under 11 U.S.C. § 550(a), Plaintiff is entitled to a judgment avoiding each such Transfer and awarding damages in a sum to be determined at trial.

## COUNT VII
## PURSUANT TO 11 U.S.C. § 551

49. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "48" of this Complaint as if more fully set forth at length herein.

50. Torac was initial or subsequent transferee of FFP and/or DFC-NJ or the immediate or mediate transferee of such initial transferee, including the person for whose benefit the Transfers were made.

51. To the extent Torac received Transfers from FFP and/or DFC-NJ, they were initial transferees of the Debtor.

52. Plaintiff is entitled to recover all such Transfers for the benefit of the estate pursuant to 11 U.S.C. § 550 of the Bankruptcy Code.

53. Pursuant to 11 U.S.C. § 551, Plaintiff is entitled to have the foregoing Transfers avoided for the benefit of the Debtor's estate.

## COUNT VIII
## FRAUDULENT CONVENANCE PURSUANT TO 11 U.S.C. § 548 (a)(1)(B)

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "53" of this Complaint as if more fully set forth at length herein.

55. Debtor was insolvent at the time it made the Transfers or became insolvent as a result of the Transfers.

56. Each Transfer was made for less than reasonably equivalent value.

57. Certain of the Transfers were made within two years of the Petition Date.

58. By virtue of the foregoing, pursuant to 11 U.S.C. §548(a)(1)(b), Plaintiff is entitled to a judgment avoiding each of the foregoing Transfers and awarding Plaintiff damages in a sum to be determined at trial.

### COUNT IX
### FRAUDULENT CONVEYANCE PURSUANT TO 11 U.S.C. § 548(a)(1)(A)

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "58" of this Complaint as if more fully set forth at length herein.

60. The Transfers were made with actual intent to hinder, delay or defraud the debtor and its creditors.

61. Certain of the Transfers were made within two years of the Petition Date.

62. By virtue of the foregoing, pursuant to 11 U.S.C. §548(a)(1)(A), Plaintiff is entitled to a judgment avoiding each of the foregoing Transfers and awarding Plaintiff damages in a sum to be determined at trial

WHEREFORE, Plaintiff Marc Pergament, as Chapter 7 trustee, of the Estate of Diamond Finance Co., Inc. respectfully requests that this Court enter judgment against Torac as follows:

A. On Counts I, II, III, IV, VI and VII, in an amount to be determined at trial, estimated to be at least $522,000, plus cost and interest at 9% per annum.

B. On Count V, the amount of the attorney's fees and expenses it incurs in connection with this action.

C. On Count VIII and IX, in an amount to be determined at trial, estimated to exceed at least $65,000, plus cost and interest at 9% per annum.

D. Such other relief as the Court deem proper.

Dated: New York, New York
       May 20, 2021

                **OLSHAN FROME WOLOSKY LLP**

                By: /s/ *Michael S. Fox*
                      Michael S. Fox, Esq.
                      Thomas J. Fleming, Esq.
                      Jonathan T. Koevary, Esq.
                      1325 Avenue of the Americas
                      New York, New York 10019
                      (212) 451-2300

                      *Special Counsel to the Chapter 7 Trustee*